UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN NORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:13-cv-01287-SEB-DML |
| | ) | |
| ALLISON TRANSMISSION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This cause is now before the Court on the cross-motions for summary judgment filed by Plaintiff on July 14, 2014 [Docket No. 28] and Defendant on August 14, 2014 [Docket No. 31]. Plaintiff, John Norris ("Mr. Norris"), brings this action against his former employer, Defendant Allison Transmission, Inc. ("Allison"), alleging that Allison interfered with and violated his rights under the Family Medical Leave Act ("FMLA"). For the reasons detailed below, we <u>DENY</u> Plaintiff's motion and <u>GRANT</u> Defendant's motion.

**<u>Factual Background</u>**

Mr. Norris began his employment with Allison on June 20, 2011. By February 2012, Mr. Norris was classified as a Fabricating Machining Specialist. His regular work schedule was Monday through Friday, but not weekends.

On January 15, 2013, Mr. Norris requested FMLA leave for his wife's serious health condition. This was the first request for FMLA leave made by Mr. Norris while

employed by Allison. This request contained a section entitled "Acknowledgement by Employee," that required him in the first two sentences to certify as follows: "I hereby acknowledge that I have read this Family and Medical Leave of Absence Request Form and have confirmed that it is accurate. I also acknowledge that I have read a copy of Allison Transmission, Inc.'s Family and Medical Leave Act Policy … and understand its contents." Norris Dep. Exh. 2. The acknowledgement signed by Mr. Norris further provided: "I understand that I must complete an FMLA Intermittent Leave Request Form each time I request intermittent FMLA leave. I understand this form must be complete before my leave request will be approved." *Id.* Mr. Norris also received a copy of Allison's FMLA policy which explained that if an employee fails to timely complete a certification or recertification when requested, that failure could result in the denial of leave. Norris Dep. Exh. 3 at 6.

On March 20, 2013, Mr. Norris was approved for intermittent FMLA leave (retroactive to March 15, 2013) for his wife's health condition, authorizing 1-2 one-day absences per month.[1] By the end of March, Mr. Norris had exceeded his certified leave by approximately two days, having taking 6.3 hours of FMLA leave on March 15 as well as full days of FMLA leave on March 20, 21, and 22. The following workweek (March

---

[1] Prior to granting this request Allison had twice denied Mr. Norris's request: first, on January 31, 2013 because of Mr. Norris's failure to submit his certification paperwork in a timely fashion, and again on February 25, 2013 because the certification he submitted did not establish that his wife had a serious health condition as defined by the FMLA in view of the fact that his wife had been treated on only one occasion during the prior twelve months. Mr. Norris does not challenge either of these denials in this lawsuit.

25 through March 29), Mr. Norris was placed on a temporary layoff unrelated to his FMLA leave.

Upon Mr. Norris's return to work on April 1, 2013, he submitted an FMLA Intermittent Leave Request Form requesting approval for his leave on March 20, 21, and 22. Mr. Norris reported for work as scheduled from Monday, April 1 through Wednesday, April 3, 2013. On April 3, 2013, Ms. Norris's wife experienced a fall, which required more substantial care from Mr. Norris. Mr. Norris asserts that he sent a text message to his supervisor on April 3, 2013 reporting that his wife had fallen and injured herself and that he would need to take time off to care for her. On April 4, 2013, Mr. Norris called into Allison's automated call-in line to report his absence as FMLA. He did the same on Friday, April 5, as well as from Monday, April 8 through Wednesday, April 10, 2013. On April 11, 2013, Mr. Norris returned to work and submitted another FMLA Intermittent Leave Request Form requesting approval of his FMLA leave for his absences on April 8 through 10, 2013. He did not submit a leave request form for April 4 or April 5, 2013. Mr. Norris did not report to work after April 11, 2013.

Allison sent Mr. Norris a letter dated April 12, 2013, requesting recertification of Mr. Norris's FMLA leave. That letter stated in relevant part as follows:

> You are herein notified that Allison Transmission is requiring recertification of your Family Medical Leave. This recertification is in accordance with 29 C.F.R. 825.308 of the Family Medical Leave Act. Your recertification papers must be received at the Employee Relations Office by April 29, 2013 or your Family Medical Leave will expire as of April 29, 2013. Your Health Care Provider has been provided with a copy of your attendance record and an application for recertification. You are responsible to return that application by the above date.

Norris Dep. Exh. 16.  On April 24, 2013, Mr. Norris's wife's healthcare provider, Dr.

Brent Huffman, faxed the completed recertification paper work to Allison, indicating that

Dr. Huffman had last seen Mr. Norris's wife on March 14, 2013, when he had referred

her for a neurosurgery evaluation.  On the form, Dr. Huffman indicated that Mr. Norris's

wife's condition would cause 3-4 one-day flare-ups per month for which she would

require care.  Dr. Huffman opined that Mr. Norris's wife "has times of worse pain.

Particularly when required to do more physical activity which exacerbates her pain."

Norris Dep. Exh. 17.  Dr. Huffman checked "yes" on the form in response to whether

"the amount of leave requested … by [Allison's] employee is consistent with the

patient[']s health condition?"  The listing of FMLA absences utilized by Mr. Norris

attached to the recertification paperwork included March 15, March 20-22, April 4-5, and

April 8-10, 2013.  By the time Allison received the completed recertification paperwork,

Mr. Norris had incurred an additional nine absences after April 10, 2013.  Following

receipt of the recertification paperwork, Allison updated Mr. Norris's FMLA approval

from 1-2 one-day absences per month to 3-4 one-day absences per month, effective

March 15, 2013 through December 31, 2013.

The same day that Allison received Mr. Norris's recertification paperwork, Mr.

Norris telephoned Rita Vecera-Clapp,[2] whose responsibilities included processing and

administering requests by Allison's hourly employees for leave under the FMLA.  Mr.

Norris inquired as to whether Allison had received his FMLA recertification paperwork

---

[2] At that time, Ms. Vecera-Clapp's surname was "Dobbs."  Vecera-Clapp Aff. ¶ 3.

from his wife's doctor and Mr. Vecera-Clapp confirmed she had.  Mr. Norris stated that

his wife had met with her surgeon the day prior and that they had decided that she would

soon be required to have surgery.  Ms. Vecera-Clapp advised Mr. Norris that he would

need to submit additional paperwork for his wife's surgery because his current FMLA

certification was only for flare-ups and he was already exceeding the amount of leave for

which he was certified.  Mr. Norris stated that he could have someone care for his wife

on Thursday, April 25 through Saturday, April 27, 2013, so he could report to work on

April 25th and pick up new FMLA paperwork to request leave for his wife's surgery.

However, Mr. Norris did not return to work on April 25th or at any point thereafter.

In a letter dated May 1, 2013, Allison informed Mr. Norris that he had not "reported for

work since 4/11/13, and [he had] been reporting [his] absences as FMLA on our

automated call-in line."  Norris Dep. Exh. 19.  The letter further stated in pertinent part as

follows:

> As detailed above, your FMLA usage still far exceeds the amount certified
> by your wife's health care provider, including the most recent certification.
> Because your usage is clearly not consistent with the certifications
> submitted and you have not provided us with any information indicating
> that your wife's condition has substantially changed since 4/24/13, Allison
> Transmission is notifying you that your absences since 4/12/13 that exceed
> the amount stated in your current certification (i.e., 3-4 episodes per month,
> 1 day per episode) have not and will not be approved as FMLA leave.  As a
> result, those absences will be treated in accordance with the Attendance
> Policy.

*Id.*  When Mr. Norris received this letter, he telephoned its author, Allison Labor

Relations Representative Jeff Pence, to discuss his recertification, during which

conversation, Mr. Norris stated that he believed the April 24th certification covered all of

his absences, and that he would provide Mr. Pence additional documentation from his wife's healthcare provider. Mr. Pence, however, informed Mr. Norris that he (Pence) believed otherwise, to wit, that Mr. Norris's recertification did not cover the number of absences that were being incurred.

Mr. Norris did not report for any of his scheduled shifts in May 2013. He called into Allison's automated absence reporting hotline for the shifts he missed on May 1-2 and 6-9. However, he did not call the hotline for the shifts he missed on May 3, 10, 13-15, 17, 20-22.

In a letter dated May 8, 2013, Allison notified Mr. Norris that his "failure to report to work for three scheduled working days signifies that you have voluntarily resigned," consistent with Paragraph 64(d) of Allison's collective bargaining agreement with UAW Local 933,[3] the Union that represented Mr. Norris. Norris Dep. Exh. 21. That letter further advised Mr. Norris: "If you have information relating to your resignation that you would like Allison Transmission to consider, you have until 4:00 p.m. on 5/14/13 in which to provide." *Id.* Mr. Norris has acknowledged receiving this letter on or "a short time after" May 8, 2013. Norris Dep. at 54. According to him, after receiving the letter

---

[3] Paragraph 64 of Allison's collective bargaining agreement with UAW Local 933 provides in pertinent part as follows:

**Loss of Seniority**
**(64)** Seniority shall be broken for the following reasons: … (d) If the employee[] fails to report to work for three working days when scheduled. Such failure shall be considered a voluntar[y] resignation unless a reason satisfactory to Allison is provided within 72 hours of the resignation.

Pence Aff. Exh. 1.

he again contacted Mr. Pence to discuss the FMLA recertification.  However, Mr. Norris did not provide Allison with any additional documentation on or before the May 14th deadline set forth in the May 8th letter.

Mr. Norris's wife was seen by her physician on May 15, 2013.  Following her examination, her physician wrote a letter a copy of which Mr. Norris provided to his union committeeman who in turn provided it to Allison on May 17, 2013.  The physician's letter stated that Mr. Norris's wife had suffered a "severe fall" on April 3, 2013 and that the fall "lengthened her period of incapacitation and the need for her husband … to remain home from work and assist her."  Norris Dep. Exh. 20.  The letter indicated that Mr. Norris would be able to return to work without scheduling restrictions on May 20, 2013.  *Id.*

Allison sent the following letter to Mr. Norris dated May 21, 2013:

The information you provided on 5/17/13 is not satisfactory to document your absence.  As you know, during your extended absence, you submitted a re-certification from the same physician who apparently provided you with the most recent note to explain your absence.  The re-certification was dated April 22, 2013.  It stated that your wife was not incapacitated and did not need continuous care.  The re-certification only certified your need to be off 3-4 days per month, one day at a time.  In addition, the re-certification did not state that the physician saw your wife at any time in early April 2013.  Because the re-certification contradicts what you have now provided only after you were notified that we consider you to have voluntarily resigned (and after the deadline for you to provide additional information), the new information is not satisfactory.  As a result, your voluntary resignation from Allison Transmission Inc. remains effective at the end of your shift on 5/7/13.

Norris Dep. Exh. 23.

Mr. Norris filed his complaint in this lawsuit on August 13, 2013, alleging that Allison interfered with and violated his rights under the FMLA by denying him continuous FMLA leave beginning in April 2013 and subsequently terminating him. The parties' cross-motions for summary judgment on Mr. Norris's claim are now fully briefed and ready for ruling.

## Legal Analysis

## I.      Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.* at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Courts often confront cross-motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. "In such situations, courts must consider each party=s motion individually to determine if that party has satisfied the summary judgment standard."

*Kohl v. Ass≠n. of Trial Lawyers of Am.*, 183 F.R.D. 475 (D.Md.1998). Thus, in determining whether genuine and material factual disputes exist in this case, the Court has considered the parties= respective memoranda and the exhibits attached thereto, and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

## II.     Overview of the FMLA

Under the FMLA, "eligible employees" of "covered employers" are entitled to take up to "12 workweeks of leave in a 12-month period" for various enumerated reasons, including "to care for the spouse … of the employee, if such spouse … has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA defines a serious health condition as "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Here, it is undisputed that Mr. Norris's wife did not require "inpatient care." As for "continuing treatment," 29 C.F.R. § 825.115 defines that term in relevant part as follows:

> (a)     Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (1)     Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.
>
> …
>
> (c) Chronic conditions. Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115(a), (c).

In order to determine whether an employee is entitled to FMLA leave, "the employer may take the employee at his word and grant the request, or 'may request certification by the employee's healthcare provider.'" *Hansen v. Fincantieri Marine Group, LLC*, 763 F.3d 832, 837 (7th Cir. 2014) (quoting *Kauffman v. Fed. Exp. Corp.*, 426 F.3d 880, 886 (7th Cir. 2005)). "At the time the employer requests certification, the employer must … advise an employee of the anticipated consequences of an employee's failure to provide adequate certification." 29 C.F.R. § 825.305(d). The health care provider's certification for intermittent leave is sufficient "if it provides the date the serious health condition began, its probable duration, appropriate medical facts about the condition, 'a statement that the employee is unable to perform the functions of [his] position, … a statement of the medical necessity for the intermittent leave …, and the expected duration of the intermittent leave.'" *Hansen*, 763 F.3d at 837 (quoting 29 U.S.C. § 2613(b)(1)-(3), (4)(B) and (6)).

The regulations provide that "[t]he employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient." 29 C.F.R. § 825.305(c). A certification is considered incomplete if one or more of the applicable entries have not been completed. *Id.* An insufficient certification is one that is complete, but contains "vague, ambiguous, or non-responsive" information. *Id.* If the employer finds a certification to be incomplete or insufficient, it must provide the employee an opportunity to cure the deficiency. *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 768 (7th Cir. 2008). If the employee does not submit a complete and sufficient certification after being given a reasonable opportunity to cure a deficiency, "the employer may deny the taking of FMLA leave." 29 C.F.R. § 825.305(d).

Employers are authorized under the regulations to request recertification if "[c]ircumstances described by the previous certification have changed significantly (e.g., the duration or frequency of the absence …)." 29 C.F.R. § 825.308(c)(2). As part of the recertification "the employer may provide the health care provider with a record of the employee's absence pattern and ask the health care provider if the serious health condition and need for leave is consistent with such a pattern." 29 C.F.R. § 825.308(e).

## III.    Discussion

Mr. Norris alleges that Allison interfered with his rights under the FMLA by terminating him for excessive absences when he was in fact entitled to FMLA leave for some or all of those absences. To succeed on an FMLA interference claim, a plaintiff must prove the following elements: (1) he was eligible for FMLA leave; (2) his employer

was covered by the FMLA; (3) he was entitled to FMLA leave; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him benefits to which he was entitled.  *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).  The crux of this case turns on the third element, to wit, whether Mr. Norris was entitled to take the amount of FMLA leave that he took in April and May 2013 in order to care for his wife.

To properly request leave under the FMLA, an employee is not required to mention or even be aware of the FMLA benefits.  Instead, an employee need only provide his employer with enough information to establish probable cause to believe the employee may be entitled to FMLA leave.  *Aubuchon v. Knauf Fiberglass GmbH*, 359 F.3d 950, 953 (7th Cir. 2004).  At that point, the employer has the obligation of inquiring further to confirm the employee's entitlement to FMLA leave.  *Id.*  As noted above, an employer may require that such leave "be supported by a certification issued by the health care provider of the eligible employee."  29 U.S.C. § 2613(a).  The employer may also require that the employee obtain subsequent recertifications "on a reasonable basis." 29 U.S.C. § 2613(e).

Here, Mr. Norris was initially approved on March 20, 2013, retroactive to March 15, 2013, for intermittent FMLA leave of approximately 1-2 days per month based on his wife's serious medical condition.  On April 12, 2013, Allison requested a recertification, presumably based on the fact that Mr. Norris had at that time taken more FMLA leave than the amount certified in the original paperwork.  Mr. Norris complied with this request, submitting on April 24, 2013 recertification paperwork completed by his wife's physician, Dr. Huffman, that indicated that Mr. Norris's wife's condition had

substantially changed and required additional care.  Specifically, in response to the question regarding an "estimate" for "the frequency of flare-ups and the duration of related incapacity," Dr. Huffman responded "3-4 times per month" lasting "1 day per episode."  Norris Dep. Exh. 17 at 4.

In response to the question regarding whether Mr. Norris's wife would "be incapacitated for a single continuous period of time" due to her medical condition, Dr. Huffman checked the box indicating "no."  *Id.* at 2.  Finally, in response to the question regarding whether the amount of leave requested by Mr. Norris up to that point was consistent with his wife's condition, Dr. Huffman checked "yes."  The dates of requested leave attached to the recertification paperwork included: March 15, 2013; March 20-22, 2013; April 4-5, 2013; and April 8-10, 2013.  After receiving the recertification paperwork on April 24, 2013, Allison updated Mr. Norris's FMLA approval from 1-2 one-day absences per month to 3-4 one-day absences per month, effective March 15, 2013 through December 31, 2013.

Allison contends that it is entitled to summary judgment on Mr. Norris's FMLA interference claim because the April 24, 2013 recertification paperwork on its face demonstrates that Mr. Norris was not qualified for continuous leave or for any FMLA leave in excess of 3-4 days per month, and thus, that it was permitted to treat any absences in excess of that estimate under its normal attendance policy without violating the FMLA.  Mr. Norris, on the other hand, claims that the April 24th recertification was internally inconsistent and thus insufficient, requiring Allison to have informed him of the deficiencies and provided him seven days to cure, which he contends they failed to

do. According to Mr. Norris, Dr. Huffman's certification was inconsistent because in one section the doctor indicated that flare-ups would only occur 3-4 intermittent days per month and that his wife would not require continuous care, but in a subsequent section, opined that the leave Mr. Norris had already requested in April which totaled five days taken consecutively,[4] was consistent with his wife's health condition.

We first address Mr. Norris's contention that the April 24th certification was inconsistent, and thus insufficient on that basis. We disagree with this characterization of that document. It is true that five consecutive days of absence exceeds the 3-4 intermittent days estimated by Dr. Huffman. However, the certification called for an estimate only and that is exactly what Dr. Huffman provided. We do not consider the fact that Dr. Huffman deemed five consecutive absences in early April (which came directly after Mr. Norris's wife's fall that exacerbated her prior condition) as necessary and appropriate to care for her medical needs to be inconsistent with his conclusion that as of April 12, 2013, the date on which Allison requested the recertification, Mr. Norris would be required to miss 3-4 days of work per month going forward to provide care for his wife. Accordingly, we do not view Dr. Hoffman's April 24th certification as vague, ambiguous, or non-responsive such that Allison should have deemed it insufficient at the time it was completed.[5]

---

[4] The actual dates were April 4-5 and 8-10, but we consider them to be consecutive since Mr. Norris did not work on weekends.

[5] Mr. Norris also contends that the April 12th letter from Allison requesting recertification did not properly inform him that his failure to provide further documentation could result in his termination in violation of 29 C.F.R. § 825.300(c), which requires employers to detail "the specific expectations and obligations of the employee and explain[] any consequences of a

The record reflects that following April 11, 2013, Mr. Norris never returned to work any shift at Allison.  By the time Allison received the completed form from Dr. Huffman on April 24, 2013, Mr. Norris had incurred an additional nine absences above those listed in the certification paperwork, bringing his total number of absences up to that point in April to fourteen, a tally clearly in excess of the 3-4 per month estimated by Dr. Huffman.  By our calculations, as of the end of April, Mr. Norris had amassed eighteen total absences.  Allison argues that because this number of absences is significantly more than the amount certified as necessary by Dr. Huffman, coupled with the fact that the absences were continuous, rather than the intermittent leave certified, the April 24th certification on its face establishes that Mr. Norris was not qualified for or entitled to the amount of FMLA leave he took.  Allison argues it was thus entitled to terminate him for excessive absences under its attendance policy without further inquiry.

A certification that facially demonstrates that an employee's absence is not FMLA-qualifying has been characterized in the Seventh Circuit as a "negative certification."  *Stoops v. One Call Communications, Inc.*, 141 F.3d 309, 312 (7th Cir. 1998).  In *Stoops*, the Seventh Circuit held that in cases in which the employer is presented with a negative certification, "the employer does not violate the FMLA by

_____

failure to meet these obligations."  However, the regulations do not require an employer to inform an employee of every possible consequence that may result from an employee's failure to provide adequate certification.  Here, the April 12 letter informed Mr. Norris that if his recertification papers were not received by April 29, 2013, his FMLA leave would expire as of that date.  Such notice is sufficient under the regulations.  *See Blair v. Wilson Trailer Co.*, No. 10-CV-04126-DEO, 2012 WL 2989661, at *5 (N.D. Iowa July 20, 2012) ("It is sufficient that an employer inform an employee that his FMLA leave may be denied without adequate certification.").

16

relying upon that certification [to deny FMLA leave] in the absence of some overriding medical evidence." *Id.* at 314. Here, the April 24th certification clearly stated that Mr. Norris did not require continuous leave. Because Mr. Norris failed to return to work at all after April 11th, culminating in accumulating over twenty consecutive absences before the effective date of his termination, a strong argument can be made that the April 24th certification constituted a negative certification under the *Stoops* analysis, given that Mr. Norris's continuous absences were in direct contravention of Dr. Huffman's certification authorizing only intermittent leave. They also clearly exceeded the 3-4 absences per month estimated to be necessary.[6]

We note the recent holding in *Hansen v. Fincantieri Marine Group, LLC*, in which the Seventh Circuit reiterated that, generally speaking, the proper course in cases in which an employee's absences exceed the physician's estimate in the certification paperwork, without more – as opposed to a case in which the certification indicates that the employee is not qualified for FMLA leave at all – is for the employer to request recertification based on a significant change in circumstances before denying FMLA leave. 763 F.3d at 840-841 (citing 29 C.F.R. § 825.308(c)(2) authorizing recertification if "[c]ircumstances described by the previous certification have changed significantly

---

[6] In *Stoops*, the court did not address "whether or to what extent an employer must give notice to an employee that it is relying on the doctor's prior certification that the employee is not qualified for FMLA leave to deny subsequently requested FMLA leave." 141 F.3d at 314. However, the court found it sufficient that the defendant employer told the plaintiff that it was relying on the prior certification to count subsequent absences against him. Similarly, here, Allison informed Mr. Norris on multiple occasions both verbally and in writing that the certification he had received from his doctor was insufficient to support the number of absences he was incurring and that his absences would be counted under the company's normal attendance policy.

(e.g., the duration or frequency of the absence …)).  Relying on the fact in that case that

the plaintiff's certification did not explicitly state that he would not need leave beyond

the estimated frequency or duration, the court reasoned that "[i]f the certified frequency

and duration were limits on the employee's entitlement to leave, there would be no need

to request recertification when the employee's requested leave exceeded the frequency or

duration stated in the certification …", as provided for by 29 C.F.R. § 825.308(c)(2).  *Id.*

at 843.  Accordingly, the court held that the defendant employer "should have sought

recertification when the frequency of [the plaintiff's] absences exceeded what was

estimated in his certification, rather than simply denying him leave."  *Id.* at 842.

The facts in *Hansen* are distinguishable from the facts before us, however, in that

the plaintiff in *Hansen* was certified for intermittent leave and that was all that he took,

despite a minor variation from the estimated number of absences certified.  In contrast, in

the case at bar, Mr. Norris did not simply exceed (and substantially so) the estimated

number of intermittent absences approved in the certification, he failed altogether to

report for work between April 12, 2013 and May 14, 2013, when he was terminated.

Our facts are more closely allied with those in *Harville v. Texas A&M University*, 833 F.

Supp. 2d 645 (S.D. Tex. 2011), where the district court granted summary judgment in

favor of the employer after it terminated an employee whose certification provided for up

to eight days of episodic leave per month, but who absented himself from work "all of

July, August 1-24, seven days in September, fourteen days in October, all of November,

and December 1-21."  *Id.* at 651.  The *Hansen* court distinguished *Harville* noting that

the plaintiff's absences "far exceeded" the estimate in the medical certification and the

employee was in fact absent from work "almost all the time." *Hansen*, 763 F.3d at 841. That is clearly what happened with Mr. Norris as well.

Even under the *Hansen* analysis Allison is entitled to summary judgment because the Company did request another recertification before counting Mr. Norris's absences as unexcused. Mr. Norris does not dispute that he spoke with Ms. Vecera-Clapp on April 24, 2013 to inform her that his wife needed surgery and that, in response, Ms. Vecera-Clapp advised him that he was exceeding the number of absences for which he had been certified and that he would need to provide a new certification to cover his wife's surgery. Mr. Norris apparently understood Ms. Vecera-Clapp's instructions because he told her that he would return to work the next day in order to pick up the new paperwork. Mr. Norris does not contend otherwise.

The FMLA regulations provide that, after an employer makes an initial request for certification, requests for further certification may be made orally. 29 C.F.R. § 825.305(a). Accordingly, from April 24th forward, Mr. Norris was on notice that he needed to provide a recertification, but he failed to do so within fifteen days of the request. In fact, despite two subsequent written notices reiterating that his unexcused absences were subject to Allison's attendance policy and requesting additional FMLA paperwork, Mr. Norris failed to provide any further documentation to Allison until May 17, 2013. Under the FMLA, if the employee "fails to provide any certification, the employer may deny the taking of FMLA leave…." 29 C.F.R. § 825.305(d). Thus, we hold that Allison did not violate the FMLA when it terminated Mr. Norris in accordance with its attendance policy, based on his failure to provide the requested medical

recertification paperwork to support his need for continuous FMLA leave in April and May 2013 after providing him at least fifteen days to do so. Mr. Norris was fully informed by Allison of the procedures he was to follow under the FMLA, of the risks he faced in not complying with those procedures, and yet chose to disregard them. His conscious disregard negates any entitlement(s) he might otherwise have had under this statute.

**IV.     Conclusion**

For the reasons detailed above, we <u>DENY</u> Plaintiff's Motion for Summary Judgment and <u>GRANT</u> Defendant's Motion for Summary Judgment. Final judgment shall enter accordingly.

IT IS SO ORDERED.


Date:     ___1/30/2015_____                      _____
                                                                    SARAH EVANS BARKER, JUDGE
                                                                    United States District Court
                                                                    Southern District of Indiana

Distribution:

Emmanuel V.R. Boulukos
ICE MILLER LLP
emmanuel.boulukos@icemiller.com

Tami A. Earnhart
ICE MILLER LLP
earnhart@icemiller.com

Andrew G. Jones
LAW OFFICE OF ANDREW G. JONES
ajones@andrewgjoneslaw.com